UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNDRA D.,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

Case No. 2:18-cv-01733-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of his application for supplemental security income benefits.

The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned agrees that the ALJ erred, and the ALJ's decision is reversed and remanded for further administrative proceedings.

## I.    ISSUES FOR REVEW

1. Did the ALJ err in evaluating the medical opinion evidence?

## II.    BACKGROUND

Plaintiff's first application for supplemental security income benefits was submitted on October 27, 1999. AR 95. Plaintiff's application was denied upon initial administrative review and on reconsideration. *Id.* A hearing was held before

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

Administrative Law Judge ("ALJ") Stanley Hogg on February 21, 2001. *Id.* In a decision dated May 23, 2001, ALJ Hogg found that Plaintiff was not disabled. AR 92-106.

On February 8, 2002, the Social Security Appeals Council granted Plaintiff's request for review of ALJ Hogg's decision, and remanded the case for further proceedings. AR 110-13. On October 22, 2002, ALJ Hogg issued an order dismissing Plaintiff's claim because he failed to provide good cause for missing a hearing scheduled for September 19, 2002. AR 114-17.

Plaintiff was incarcerated for most of the period between 2002 and 2009. AR 497, 500, 1771. On August 5, 2009 Plaintiff filed a new application for supplemental security income benefits, alleging a disability onset date of July 1, 1999. AR 17, 264-70, 1438. Plaintiff's application was denied upon initial administrative review and on reconsideration. AR 17, 119-21, 129-35, 1438. A hearing was scheduled before ALJ Larry Kennedy on July 25, 2011. AR 44-57, 1497-1510. Plaintiff did not appear at this hearing, and ALJ Kennedy issued a Notice to Show Cause for Failure to Appear on July 28, 2011. AR 46-47, 191-95, 1499-1500. On August 9, 2011, Plaintiff responded that he missed the hearing because he was ill. AR 197-98. A new hearing was scheduled for January 5, 2012. AR 58-75, 1511-28. Plaintiff appeared, and was granted a continuance so he could find a new attorney. AR 70-71, 1523-24.

Another hearing was scheduled for May 21, 2012. AR 76-88, 1529-41. Plaintiff was not present, and Plaintiff's attorney reported that he was incarcerated in King County jail. AR 79-81, 258, 260, 1531-33. The ALJ found that Plaintiff had not established good cause for failing to appear, and issued an unfavorable decision on the

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 2

record on August 7, 2012. AR 14-35, 1435-56. The Social Security Appeals Council denied Plaintiff's request for review on December 17, 2013. AR 1-5, 1464-68.

On February 25, 2014, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision. AR 1474. On December 5, 2014, this Court granted a stipulated motion to reverse and remand this case for further administrative proceedings. AR 1476-90. On June 12, 2015, the Appeals Council vacated the ALJ's August 7, 2012 decision and issued an order remanding the case for further administrative proceedings consistent with the instructions contained in the stipulated remand order. AR 1491-96.

Plaintiff was incarcerated between October 2015 and April 2016, and again between April 2016 and July 2017. AR 1403, 1410, 1606. On July 31, 2017, ALJ Kennedy held a new hearing. AR 1385-98. Plaintiff was given a continuance to find a new attorney. AR 1389-91.

On April 23, 2018, ALJ Kennedy held another hearing at which Plaintiff and his attorney appeared. AR 1399-1434. In a decision dated August 1, 2018, the ALJ found that Plaintiff was not disabled. AR 1346-1372.

Plaintiff asks this Court to reverse the ALJ's decision and to remand this case for additional proceedings. Dkt. 4, Dkt.12, p. 18.

### III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## IV. DISCUSSION

In this case, the ALJ found that Plaintiff had the following severe, medically determinable impairments: Human Immunodeficiency Virus ("HIV"); right shoulder disorder; bunions; affective disorder; anxiety disorder; personality disorder; and substance abuse disorder. AR 1351. The ALJ found that Plaintiff also had a range of other non-severe impairments. AR 1352.

Based on the limitations stemming from these impairments, the ALJ assessed Plaintiff as being able to perform a reduced range of light work. AR 1354. Relying on vocational expert ("VE") testimony, the ALJ found that Plaintiff did not have any past relevant work, but determined that there were other light, unskilled jobs Plaintiff could perform; therefore the ALJ determined at step five that Plaintiff was not disabled. AR 1370-72.

### A. Whether the ALJ erred in evaluating the medical opinion evidence

Plaintiff alleges that the ALJ erred in evaluating medical opinion evidence from Christian Ramers, M.D., Elizabeth Gabay, M.D., Jessica Yager, M.D., Brian Wood, M.D., Elizabeth Duke, M.D., David Widlan, Ph.D., Tasmyn Bowes, Psy.D., and Renee Eisenhauer, Ph.D. Dkt. 12, pp. 3-17.

In assessing an acceptable medical source – such as a medical doctor – the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citing

*Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

1.  Dr. Ramers

On February 10, 2012, Plaintiff's treating physician Dr. Ramers opined that Plaintiff could lift a maximum of 10 pounds and frequently lift or carry 2 pounds, sit for most of the day, and stand for 6 hours in an 8-hour workday. AR 2098-99. In a letter dated May 17, 2012, Dr. Ramers opined that "at the very most" Plaintiff might be able to perform part-time work, but that given his issues with recurrent shoulder dislocation, this work should not include any lifting or other physical activity that might exacerbate his condition. AR 1317-18.

The ALJ assigned "little weight" to Dr. Ramers' opinions, reasoning that they were: (1) inconsistent with the longitudinal evidence; (2) based in part on Plaintiff's unreliable self-reports; and (3) even if Plaintiff were limited to sedentary work, there would still be a significant number of jobs Plaintiff could perform at step five of the sequential evaluation. AR 1364-65.

As a preliminary matter, Plaintiff argues that the ALJ erred by referring to Dr. Ramers as "Dr. Pamers" in the hearing decision, and therefore did not give Dr. Ramers' opinions the weight they were they due under Social Security regulations. Dkt. 12, pp. 3-4.

In evaluating Dr. Ramers' February 2012 opinion, the ALJ referred to him as "Dr. Pamers" and referred to December 2011 as the relevant date of the medical opinion rather than February 2012 (Dr. Ramers examined Plaintiff in December 2011, but issued his opinion in February 2012). AR 1365-66, 2099. However, any error in using a

name that was different from Dr. Ramers is harmless as long as the Court is satisfied the ALJ was actually referring to Dr. Ramers' medical opinion, and the ALJ provided specific, legitimate reasons for discounting all the opinion evidence in question. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting that harmless error principles apply in the Social Security context).

With respect to the ALJ's first reason for discounting Dr. Ramers' opinions, an inconsistency with the objective evidence can serve as a specific, legitimate reason for discounting a medical opinion. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.")

Dr. Ramers' opinions address Plaintiff's physical limitations, and Dr. Ramers stated that the lifting restrictions contained in his opinions were related to Plaintiff's recurrent shoulder dislocation. AR 1317-18.

In discounting the opinions of Dr. Ramers and other physicians, the ALJ reasoned that imaging studies of Plaintiff's right shoulder demonstrated only mild findings, that there was a lack of objective evidence to substantiate Plaintiff's claim that his shoulder dislocates frequently, and Plaintiff's condition did not prevent him from lifting weights in jail. AR 1357-59, 1365. The ALJ cited evidence indicating that Plaintiff's shoulder was more prone to dislocation when he elevated his right arm above 90 degrees, and accommodated Plaintiff's right shoulder injury be restricting him to jobs where overhead reaching is "seldom" required. AR 1229,1354,1357. The ALJ also cited generally normal physical examinations. AR 1356-59, 1365-66.

As Plaintiff points out, Plaintiff's examining physicians have often noted his history of frequent shoulder dislocations. AR 981, 986, 1317, 2099, 2101, 2108. Yet, the ALJ's conclusion that Plaintiff did not complain of any shoulder dislocation after July 2012 is supported by the record; and the ALJ reasonably inferred that a lack of symptom complaints and ability to lift weights in prison was inconsistent with Plaintiff's allegation of a disabling shoulder impairment. AR 1357-59; *see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982) (An ALJ is entitled to draw inferences logically flowing from the evidence).

Moreover, any error would be harmless, because there is no evidence that Plaintiff's shoulder impairment would impose limitations beyond those already contained in the RFC. *Molina*, 674 F.3d at 1115. Accordingly, the Court cannot say that the ALJ erred in evaluating Dr. Ramers' opinions.

2. Dr. Gabay

On December 15, 2010, Dr. Gabay opined that Plaintiff could stand for 15 minutes in an eight-hour workday, sit for 2 hours, lift 10 pounds occasionally and lift 5 pounds frequently. AR 985-86, 988. Dr. Gabay stated that Plaintiff would have unspecified gross or fine motor skill restrictions due to his recurrent right shoulder dislocation. AR 986, 988. Dr. Gabay also noted that Plaintiff was scheduled to attend inpatient treatment for pain and swelling in his left foot. *Id.*

The ALJ assigned "little weight" to Dr. Gabay's opinion for the same reasons he discounted Dr. Ramers' opinion. AR 1365-66. For the reasons discussed above, the ALJ has provided specific, legitimate reasons for discounting Dr. Gabay's opinion as to Plaintiff's shoulder impairment. *See supra* Section A.1. The ALJ also noted that while

Plaintiff had a long history of bunions in his feet, this condition did not prevent him from standing or walking for any length of time, physical examinations consistently demonstrated a grossly normal gait, and Plaintiff was able to play football. AR 1359, 1365-66. In citing these inconsistencies, the ALJ has provided specific and legitimate reasons for discounting Dr. Gabay's opinion as to Plaintiff's standing and sitting limitations. *See* 20 C.F.R. § 416.927(c)(4).

### 3. Dr. Yager

On January 21, 2010 Dr. Yager completed a physical evaluation of Plaintiff and documented this examination on a form provided by the Washington State Department of Social and Health Services ("DSHS"). AR 971-76. Dr. Yager stated that Plaintiff would have lower back spasms and fatigue with prolonged or sustained physical activity secondary to his compromised immune system, would be unable to perform more than sedentary work, and might be unable to work at all for prolonged periods. AR 972-73. Dr. Yager also opined that Plaintiff would be unable to participate in job training until he stopped using drugs and alcohol. AR 974.

On July 21, 2010, Dr. Yager completed another physical evaluation, and prepared the form for DSHS. AR 978-83. Dr. Yager noted that Plaintiff's shoulder impairment would restrict his ability to push, pull, and reach with his right arm and restricted Plaintiff to performing light work. AR 977-78, 981.

The ALJ assigned "little weight" to Dr. Yager's January 2010 opinions, reasoning that: (1) the restrictions contained in the opinion relied in part on the symptoms of Plaintiff's HIV and back spasms, which do not impose significant functional limitations,

and (2) Dr. Yager's opinion regarding Plaintiff's shoulder impairment is inconsistent with the results of her own physical examination. AR 1365.

At step two of the sequential evaluation, the ALJ found Plaintiff's lower back spasms to be a non-severe impairment, reasoning that Dr. Yager's January 2010 examination of Plaintiff revealed only a "minimal" spasm in Plaintiff's lower back, and that Dr. Yager's July 2010 examination revealed completely normal findings in Plaintiff's lumbar spine, including a full range of motion and no signs of muscle spasm. AR 972, 980,1352. The ALJ also reasoned that treatment records from 2010 through 2018 documented "no more than sporadic, temporary complaints" of lower back pain and that no physician had prescribed any specific treatment for this condition. AR 1352, 1356-57.

With respect to Plaintiff's condition attributable to HIV, the ALJ found that while Plaintiff had a history of HIV-related infections, the medical record since August 2009 indicated no significant ongoing complications due to HIV, and that except for periods of non-compliance, Plaintiff's condition was well controlled with High Active Antiretroviral Therapy ("HAART") medications. AR 1355-57.

The record shows an inconsistency between Dr. Yager's opinion concerning the impact of Plaintiff's HIV and back spasms, with the other opinions and evidence in the medical record -- including Dr. Yager's own observations – and therefore the ALJ relied on a specific and legitimate reason for discounting Dr. Yager's opinion as to the limiting effects of Plaintiff's back impairment and his HIV. 20 C.F.R. § 416.927(c)(4). And the ALJ has provided an additional specific, legitimate reason -- citing the effectiveness of Plaintiff's HAART treatment -- for discounting Dr. Yager's opinion concerning the impact of Plaintiff's HIV. *See* 20 C.F.R. § 416.929(c)(3)(iv) (the effectiveness of medication and

treatment are relevant to the evaluation of a claimant's alleged symptoms); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir.2007) ( "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

The ALJ assigned "partial weight" to Dr. Yager's July 2010 opinion, reasoning that her opinion that Plaintiff could perform light work was consistent with the medical record. AR 1364. However, the ALJ did not adopt Dr. Yager's opinion that Plaintiff's shoulder impairment would restrict his ability to push, pull, and reach with his right arm. The ALJ reasoned that that this part of Dr. Yager's opinion was inconsistent with: (1) Plaintiff's ability to play football and lift weights; (2) diagnostic imaging studies revealing only mild problems with Plaintiff's right shoulder; and (3) longitudinal physical examinations demonstrating that Plaintiff had full or near full range of motion in his upper extremities, grossly intact motor strength, sensation, and muscle tone. AR 1104, 1634, 1826-30, 1861.

For the reasons discussed above, in citing the inconsistency of Dr. Yager's opinion compared to Plaintiff's activities and the medical record, the ALJ has provided specific and legitimate reasons for discounting Dr. Yager's opinion regarding Plaintiff's shoulder impairment. *See supra* Section A.1.

4. <u>Dr. Wood</u>

On April 15, 2014 Dr. Wood completed a physical evaluation form for DSHS in which he restricted Plaintiff to sedentary work due to the limitations caused by Plaintiff's shoulder impairment and bunions. AR 2100-04.

The ALJ assigned "little weight" to Dr. Wood's opinion for the same reasons he discounted the opinions of Dr. Ramers and Dr. Gabay.[1] AR 1365-66. For the reasons discussed above, in citing the inconsistency of Dr. Wood's with Plaintiff's activities and the medical record, the ALJ has provided specific, legitimate reasons for discounting Dr. Wood's opinion concerning the limiting effects of Plaintiff's shoulder impairment and his bunions. *See supra* Sections A.1 and A.2.

    5. <u>Dr. Duke</u>

On August 1, 2017, Dr. Duke completed a physical evaluation form for DSHS in which she also restricted Plaintiff to sedentary work due to the limitations caused by Plaintiff's shoulder impairment and bunions. AR 2107-09. The ALJ assigned "little weight" to Dr. Duke's opinion for the same reasons he discounted the opinions of Dr. Ramers, Dr. Gabay, and Dr. Wood, and for the reasons discussed above, the ALJ has provided specific, legitimate reasons for discounting Dr. Duke's opinion. AR 1365-66; *see supra* Sections A.1, A.2, and A.4.

    6. <u>Dr. Widlan and Dr. Bowes</u>

On January 12, 2010. Dr. Widlan performed a psychological evaluation of Plaintiff for DSHS. AR 676-80. Dr. Widlan's evaluation consisted of a clinical interview, a mental status examination, a review of the available medical records, and psychological testing. *Id.*

---

[1] In evaluating the opinion evidence, the ALJ noted that he was assigning "little weight" to Dr. Wood's opinion, but did not list Dr. Wood's opinion with the opinions of Dr. Gabay, Dr. Ramers, and Dr. Duke when explaining why he was discounting these opinions. AR 1365-66. However, this appears to be a matter of form rather than substance; Plaintiff acknowledges that the ALJ gave "little weight" to all the medical opinions restricting Plaintiff to sedentary work, including Dr. Wood's. *See* Dkt. 12, p. 7.

Based on the results of this evaluation, Dr. Widlan observed that Plaintiff had "considerable" deficits in memory, concentration, and social reasoning, "some" difficulty performing simple, repetitive commands and was unable to complete moderately complex tasks. AR 680. Dr. Widlan opined that Plaintiff would likely would struggle to accept instruction from a supervisor and appeared to have difficulty with adaptation associated with both chronic and acute difficulties, which was exacerbated by substance abuse. *Id.*

On July 6, 2011, Dr. Widlan performed another evaluation of Plaintiff for DSHS, assessing Plaintiff as having a range of moderate and marked work-related mental limitations stemming from his depression and anxiety. AR 2166-72.

On March 4, 2014, Dr. Widlan performed a third evaluation for DSHS, assessing Plaintiff as having moderate, marked, and severe work-related mental limitations stemming from his depression and anxiety. AR 2176-86.

On August 10, 2017, Dr. Bowes performed an evaluation for DSHS -- including a clinical interview, a mental status examination, and psychological testing. AR 2187-98. Dr. Bowes determined that Plaintiff was experiencing a range of moderate and marked mental limitations, and rated the overall severity of Plaintiff's mental impairments as moderate. AR 2190-91.

The ALJ assigned "little weight" to the opinions of Dr. Widlan and Dr. Bowes because: (1) they were inconsistent with Plaintiff's relatively minimal mental health treatment and lack of follow through with mental health appointments; (2) inconsistent with largely normal mental status findings; (3) Dr. Widlan and Dr. Bowes were unaware of the longitudinal record, and reviewed minimal or no outside treatment records in

preparation for their evaluations; (4) Dr. Widlan and Dr. Bowes relied in part on Plaintiff's unreliable self-reports, and were unaware of discrepancies in the record because they did not review the entire medical record; and (5) the opinions of Dr. Widlan and Dr. Bowes are internally inconsistent with the results of their own observations and examination findings. AR 1359-62, 1367-69.

The ALJ's reasoning is supported by the record, and the ALJ has provided specific and legitimate reasons for discounting the opinions of Dr. Widlan and Dr. Bowes.

The ALJ found that the opinions of Dr. Widlan and Dr. Bowes were inconsistent with the longitudinal record. AR 1367. Specifically, the ALJ found that their assessment of marked and severe mental limitations was inconsistent with numerous mental status examinations revealing largely normal findings, including appropriate mood/affect, cooperative/pleasant behavior, appropriate dress/grooming, good eye contact, full alertness/orientation, logical and organized thought processes, normal thought content, normal memory, intact concentration, and no acute distress. AR 1360-62, 1367.

The ALJ provided a detailed list of normal mental status findings between 2009 and 2018, and also noted that the mental status examinations conducted by Dr. Widlan and Dr. Bowes were inconsistent with disabling mental limitations. AR 1360-62, 1367-69; 20 C.F.R. § 416.927(c)(4); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (a finding that a medical opinion contains internal inconsistencies can serve as a specific, legitimate reason for discounting it); see also *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of internally inconsistent medical opinion).In so doing, the ALJ has established that the

longitudinal record, including the mental status examinations conducted by Dr. Widlan and Dr. Bowes, is inconsistent with Plaintiff's allegations of disabling mental limitations.

In citing Dr. Widlan and Dr. Bowes' lack of familiarity with this longitudinal record, the ALJ has provided an additional specific and legitimate reason for discounting their opinions. During his January 2010 evaluation, Dr. Widlan stated that his opinion was based on his own examination of Plaintiff, forms completed by Plaintiff in connection with his disability application, and records of two office visits from September 2009. AR 676. During his July 2011 evaluation, Dr. Widlan stated that he only reviewed a DSHS evaluation from January 4, 2011 conducted by Ellen Walker Lind, Ph.D. which included diagnoses of dysthymic disorder and alcohol abuse in early full remission. AR 996, 2166. Dr. Lind assessed Plaintiff as having no more than moderate work-related mental limitations. AR 998. During his March 2014 evaluation, Dr. Widlan reviewed only his own July 2011 opinion and a December 2011 from examining psychologist Charles Quinci, Ph.D. which did not assess any functional limitations. AR 2173-76.

In her August 2017 opinion, Dr. Bowes stated that all the information in her report was collected from the Plaintiff, and that she did not review any records or previous psychological evaluations before rendering her opinion. AR 2187.

The record is clear that Dr. Widlan and Dr. Bowes were not familiar with the longitudinal record concerning Plaintiff's mental impairments when rendering their opinions, and the ALJ did not err in citing this lack of familiarity as a reason for discounting their opinions. *See* 20 C.F.R. § 416.927(c)(6) ("the extent to which a medical source is familiar with the other information in your case record" is a relevant factor that the agency will consider in deciding the weight to give to a medical opinion).

7. <u>Dr. Eisenhauer</u>

Dr. Eisenhauer conducted a review of the medical evidence for DSHS on March 14, 2014. AR 2199-2201. Dr. Eisenhauer's evaluation consisted of a review of Dr. Widlan's March 4, 2014 opinion and reached nearly identical conclusions, assessing Plaintiff as having a range of moderate, marked, and severe work-related mental limitations. AR 2200.

The ALJ did not discuss or assign weight to Dr. Eisenhauer's opinion. The Ninth Circuit has held that failing to discuss a medical opinion does not constitute harmless error. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) ("the ALJ's disregard for Dr. Johnson's medical opinion was not harmless error and Dr. Johnson's opinion should have been considered") (citing 20 C.F.R. § 404.1527(c) (noting that this regulation requires the evaluation of "every medical opinion" received)).

When the ALJ ignores significant and probative evidence in the record favorable to a claimant's position, such as an opinion from an acceptable medical source, the ALJ "thereby provide[s] an incomplete residual functional capacity [RFC] determination." *Id.* at 1161. Furthermore, when the RFC is incomplete, the hypothetical question presented to the vocational expert relied on at step five necessarily also is incomplete, "and therefore the ALJ's reliance on the vocational expert's answers [is] improper." *Id.* at 1162.

Defendant acknowledges that the ALJ failed to evaluate Dr. Eisenhauer's opinion, but contends that this constitutes harmless error since Dr. Eisenhauer's assessment of Plaintiff's functional limitations is identical to Dr. Widlan's and based entirely on his opinion. Dkt. 16, p. 10. Defendant reasons that because the ALJ did not

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 15

err in evaluating Dr. Widlan's opinion, any error in not evaluating Dr. Eisenhauer's opinion is inconsequential. *Id.*

The Defendant's argument is not persuasive. This court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

Although the ALJ has provided specific, legitimate reasons for discounting Dr. Widlan's opinions, there is no reason given for discounting Dr. Eisenhauer's opinion. Further, the fact that Dr. Eisenhauer's opinion is identical to Dr. Widlan's, which assesses a range of marked and severe mental limitations potentially consistent with a finding of disability, does not necessarily bolster Defendant's argument.

Holding that a subsequent opinion consistent with a finding of disability can be ignored because it is similar to another opinion that has been properly discounted would turn the substantial evidence standard on its head; an additional opinion from an acceptable medical source, which is consistent with a finding of disability, obviously has the potential to bolster a claimant's case, and the Court cannot say that a failure to consider such an opinion constitutes harmless error. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012).

B. <u>Remand With Instructions for Further Proceedings</u>

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should

remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the ALJ must evaluate the opinion of Dr. Eisenhauer and assess its impact on Plaintiff's residual functional capacity. Accordingly, remand for further proceedings is the appropriate remedy.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred when he determined Plaintiff to be not disabled. Defendant's decision to deny benefits is therefore REVERSED and this matter is REMANDED for further administrative proceedings. The ALJ is directed to evaluate the opinion of Dr. Eisenhauer on remand and assess its impact on Plaintiff's residual functional capacity.

Dated this 13th day of February, 2020.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 18